## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CONLAN DALY, AS DESIGNATED    :
LIFE INSURANCE BENEFICIARY OF  :
THOMAS DALY (PLAN NO. 101846)   :
                                         :
          Plaintiff,              :
                                         :
          v.                    :     C.A. No. 17-95-LPS
                                         :
METROPOLITAN LIFE INSURANCE    :
COMPANY                             :
                                       :
          Defendant.        :
                                       :

Marc H. Snyder, Kelly Anne Parry Inverso, ROSS, MOSS, SNYDER & BLEEFELD, LLP, Wilmington, DE

    Attorneys for Plaintiff Conlan Daly, as Designated Life Insurance Beneficiary of Thomas Daly (Plan No. 10186)


David P. Primack, Randi F. Knepper, MCELROY, DEUTSCH, MULVANEY & CARPENTER LLP, Wilmington, DE

    Attorneys for Defendant Metropolitan Life Insurance Company

### <u>MEMORANDUM OPINION</u>

September 30, 2018
Wilmington, Delaware

**STARK, U.S. District Judge:**

Plaintiff Thomas Daly[1] ("Daly" or "Plaintiff") sued Defendant Metropolitan Life Insurance Company ("MetLife" or "Defendant"), alleging claims pursuant to the Employment Retirement Income and Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001-1461. (D.I. 1) Plaintiff seeks recovery of long-term disability benefits allegedly due under a policy of insurance issued by Defendant to Plaintiff's employer as well as recovery of costs and attorneys' fees as provided by ERISA. (*Id.* ¶¶ 37-41, 62) The parties agreed that the case could be decided on cross-motions for summary judgment without conducting any additional discovery. (*See* D.I. 9) Such motions are now pending before the Court and are fully briefed.[2] (*See* D.I. 15-18, 20-23, 25) For the reasons stated below, the Court will grant Defendant's Motion (D.I. 15) and deny Plaintiff's Motion (D.I. 21).

## I.     BACKGROUND

### A.     General Background

The complaint alleges that "[t]he medical records reflect that, beginning in or about March 2013, Mr. Daly had been suffering from increasingly constant and severe lumbar spine pain and lower extremity pain and symptoms; having been diagnosed as suffering from ***"significant scoliosis with spondylolisthesis and root compression*."** (D.I. 1 ¶ 14) (emphasis added by Plaintiff)

---

[1]Plaintiff Thomas Daly passed away on June 1, 2018. Thereafter, the Court granted a subsequent unopposed motion to substitute the proper party and amend the party plaintiff to Conlay Daly, as Designated Life Insurance Beneficiary of Thomas Daly (Plan No. 101846). (*See* D.I. 31, 32)

[2]Plaintiff filed an amended motion to cure certain procedural defects in its original motion. (*See* D.I. 17, 19, 21) Therefore, Plaintiff's original motion (D.I. 17) will be denied as moot.

The complaint further alleges that "Mr. Daly's total disability status from March 2013 and ongoing have been continually supported by his medical specialists who have been treating him for chronic, debilitating lumbar spine injuries and pain, with corresponding severe lower extremity radiculopathy." (*Id.* ¶ 15)

According to the complaint, Plaintiff was eligible for benefits under an insurance plan administered by MetLife. (*Id.* ¶¶ 7-12) Plaintiff applied for benefits under the plan based on his medical condition and MetLife denied the claim. (*Id.* ¶¶ 13-36) Plaintiff alleges MetLife violated ERISA and wrongfully terminated his claim for benefits. (*Id.* ¶¶ 37-65)

### B.    Plaintiff's Claim for Disability Benefits

Plaintiff was employed as a Software Salesperson for Oracle U.S.A. Inc.. (D.I. 1 ¶ 3) As an employee, Plaintiff was a participant in the Basic and Optional Employee Life Continued Protection under Oracle's policy of insurance (the "Plan") issued and administered by Defendant. (*Id.*) Plaintiff was enrolled for $50,000 of basic life insurance and $1,542,000 in supplemental life insurance. (*Id.* ¶ 9) The Plan provided for continuation of insurance while a participant has "Total Disability" or is "Totally Disabled," which the Plan defined as follows: "because of a sickness or an injury: you cannot do your job; and you cannot do any other job for which you are fit by your education, your training or your experience." (*Id.* ¶ 10)

Plaintiff submitted a claim that he was Totally Disabled as of March 5, 2013. (D.I. 12 MET/DALY/AR-31) Plaintiff stated that he had back pain, was not "able to engage in any gainful occupation," and does not expect to return to work. (*Id.*) Plaintiff's physician, Dr. Domingo C. Singson, provided a statement showing Plaintiff's diagnosis was "lumbar disc herniation" and "sciatica." (*Id.* MET/DALY/AR-33) As to Plaintiff's physical capabilities, Dr.

Singson noted Plaintiff was able to continuously sit, stand, or walk for "0" hours.  (*Id.*

MET/DALY/AR-34)  On the extent of disability, Dr. Singson noted Plaintiff was "totally

disabled," could not perform his regular occupation or any other occupation, and expects Plaintiff

to "never" be able to "resume any work."  (*Id.*)  The doctor also expected Plaintiff would be

having "lumbar surgery."  (*Id.*)

C.     **MetLife's Initial Denial**

In a letter dated September 19, 2013, MetLife notified Plaintiff it had denied his claim

because Plaintiff "d[id] not meet the definition of disability as defined in [his] Plan."  (D.I. 1-1 at

1)  MetLife's denial letter stated that "[a]fter reviewing everything in your file, we conclude that

the information does not support a severe functional impairment that would preclude your ability

to return to work as defined by the plan."  (*Id.* at 2)  The letter further noted that "the definition

of disability requires that you be unable to perform any occupation.  Your current residual

functional abilities are unclear from the limited medical provided."  (*Id.* at 2)  Plaintiff's file

included documentation and medical records dated between May and July 2013.  (*See e.g.*, D.I.

12 MET/DALY/AR-422-47)  MetLife's review of Plaintiff's file included a review by MetLife's

Nurse Consultant, who concluded that "the information submitted does not adequately support a

functional impairment precluding your ability to return to work in any capacity."  (*Id.*

MET/DALY/AR-18)

The Nurse Consultant reviewed the office visit notes from Plaintiff's primary care

physician, Dr. Singson, Plaintiff's neurosurgeon, Dr. Rastogi, and Plaintiff's own description of

pain.  (*Id.*)  Based on this review, the Nurse Consultant noted that the restrictions and limitations

of "zero functions in all areas" indicated by Dr. Singson are "not medically supported," in part

because his office visit notes dating from March to April 2013 reported "back pain only mild to moderate and medications [were] effective," which also contradicted Plaintiff's self-reported severity of pain. (*Id.*)

**D.     Plaintiff's Initial Appeal and MetLife's Reinstatement of Plaintiff's Claim**

By letter dated October 29, 2013, Plaintiff appealed MetLife's determination, submitting additional documentation, including an "Abnormal Neurological Exam Result." (*See* D.I. 12 MET/DALY/AR-116-33)  Again, a MetLife Nurse Consultant conducted a review, but this time concluded that "[t]he additional clinical documentation supports a severity of impairment that would preclude a RTW [return to work] in any occupation at this time." (*Id.* MET/DALY/AR-16)  The additional information included records from the neurosurgeon, Dr. Rastogi, and "EMG results and office notes from PCP [primary care physician, Dr. Singson]." (*Id.*)  The Nurse Consultant noted that "[t]he physical exam findings, narcotic medications, MRI and electrodiagnostic findings support low back pain with radiculopathy that would preclude any prolonged sit, stand or walk [sic] which would preclude any work capacity at this time." (*Id.*)  The MetLife Nurse Consultant further noted that the "[n]eurosurgeon stated that surgical intervention is possible, however [Plaintiff] did not want to proceed with surgery at this time." (*Id.*)  Accordingly, MetLife "determined that you do meet the requirements set forth in your Plan" and reinstated Plaintiff's claim for benefits. (D.I. 1-2 at 1)

Subsequently, MetLife sought and Plaintiff continued to provide medical records. (*See e.g.*, D.I. 12 MET/DALY/AR-139-50, 151-63)

**E.     MetLife's Second Denial**

In a letter dated May 9, 2016, MetLife again terminated Plaintiff's claim, having

"determined that [Plaintiff] no longer me[t] the definition of disability as defined in [Plaintiff's]

Plan." (D.I. 1-3 at 1) As further explanation, the letter noted:

> After careful review of information on file it has been determined that the information is insufficient to support a current functional impairment precluding your ability to return to the workforce. Our records show that your last day worked was March 5, 2013 and you were out of work due to cervical low back pain. The most recent medical documentation received appears to show minimal findings. There is no evidence that back surgery or any other treatment other than Epidural steroid injections and physical therapy in 2013. Since that time, there is no evidence of conservative treatment. There have been no changes in pain medications. We have no records from the podiatrist treating the ulcer on your foot.

*(Id.)*

## F. Plaintiff's Second Appeal

In a letter dated May 19, 2016, Plaintiff appealed to MetLife, seeking to reinstate his

benefits. (D.I. 1-4) Plaintiff provided supporting records, including a 2013 follow-up office visit

to his neurosurgeon, Dr. Rastogi (D.I. 12 MET/DALY/AR-315-16), a 2013 MRI result of lumbar

spine (*id.* MET/DALY/AR-317-18), 2013 electrodiagnostic results (*id.* MET/DALY/AR-319-

22), and a Medical Source Statement Dr. Singson had provided to the Social Security

Administration, which stated that Plaintiff could stand and/or walk for less than two hours and sit

for less than six hours in an eight-hour work day, and could never climb, kneel, crouch or stoop,

but could occasionally balance or crawl (*id.* MET/DALY/AR-323-26). Arguing that his "claim

has been improperly terminated," Plaintiff contended: "[s]ince the original appeal, the

[Plaintiff's] condition has not materially improved;" the denial letter seems to "coerce" Plaintiff

into surgical intervention to avoid termination of his benefits; his then-current pain medication

was intended to maintain "a delicate balance" between obtaining relief and avoiding addiction; and his Social Security hearing was scheduled for July 16, 2016. (D.I. 1-4 at 1-2)

### G. MetLife's Final Termination of Plaintiff's Claim

MetLife continued to request updated medical records to "further evaluate [Plaintiff's] claim for ongoing benefits." (D.I. 12 MET/DALY/AR-166 (October 7, 2015, letter requesting medical records); *see also id.* MET/DALY/AR-168 (March 16, 2016 letter requesting same)) In response, Plaintiff provided medical records dated 2013 and neurosurgeon Dr. Rastogi's office visit notes. (*See id.* MET/DALY/AR-169-300) After reviewing the medical records, a MetLife Nurse Consultant stated:

> It would appear that he [Plaintiff] does not have a level of impairment which would preclude sedentary duties. The majority of the records are from Dr. Singson, PCP [primary care physician] and are basically repetitive each visit with minimal physical findings. There is no evidence he has had any back surgery or has any treatment other than one ESI [epidural steroid injection] and PT [physical therapy] in 2013. Since that time there is no evidence of conservative treatment. There have not been any changes in his pain meds. There are no physical findings documented regarding his back condition other than lumbar flexion to 40 deg[rees] and slight spasm. . . . The APS [Attending Physician Statement] states he is not capable of any sit, stand, walk [sic] and then records states he is capable of all ADLs [activities of daily living] without assistance which is contradictory.

(*See id.* MET/DALY/AR-11)

In a letter dated July 8, 2016, MetLife upheld the termination of Plaintiff's claim and further noted that Plaintiff has exhausted his administrative remedies under the Plan and no further appeals will be considered. (D.I. 1-5 at 1, 4) Before reaching this decision, MetLife sought an opinion of its Medical Director, Dr. Sharon Yun (D.I. 12 MET/DALY/AR-418-19), a

review of Dr. Yun's report by Plaintiff's physicians, Drs. Singson and Dr. Rastogi (*id.* MET/DALY/AR-710, 723), and an Employability Assessment and Labor Market Analysis[3] by MetLife's Vocational Rehabilitation Consultant (*id.* MET/DALY/AR-589, 634-35).

Dr. Yun's opinion concluded that Plaintiff is not totally disabled, and could work in a part-time capacity.  (*See id.* MET/DALY/AR-419) (noting that "medical information provided support[] for continuous physical functional impairment, with restrictions and limitations, for the period; 5/3/16 onward")  In particular, she stated:

> In my opinion, physical function in a part time capacity may be reasonable and likely permanent.  The claimant should not climb, twist, bend or stoop.  Continuous sitting should be possible as he should be able to shift positions when seated and an additional 5 minute stand and stretch break every hour could be considered.  He should be able to stand and walk occasionally up to 10 minutes at a time and up to 1 hour per day.  He should be able to lift up to 10 lbs. occasionally.  He should be able to perform fine finger and eye/hand movements continuously as there does not appear to be any upper extremity findings.

(*Id.*)  Explaining the rationale for her opinion after reviewing the medical records from Dr. Rastogi and Dr. Singson, she further stated:

> While the claimant's symptoms are noted and appreciated, in my opinion, the recent medical information provided does not demonstrate findings to preclude function in a part capacity with the above noted restrictions and limitations.  Updated medical information will be gladly reviewed if [sic] becomes available.

(*Id.*)

---

[3]MetLife's initial assessment identified occupations, such as forklift operator, and crane operator, which in its view Plaintiff was qualified and could perform part time within his current restrictions and limitations based on his education, training, and experience.  (D.I. 12 MET/DALY/AR-590)  MetLife acknowledged that this initial assessment was incorrect and obtained another assessment.  (*See* D.I. 16 at 6)

Drs. Singson and Dr. Rastogi were asked to provide their comments on Dr. Yun's opinion, and if they were "not in agreement with [Dr. Yun's] assessments," they were asked to "submit clinical evidence in support of [their] conclusions." (*Id.* MET/DALY/AR-710, 723) None of them provided any comments addressing Dr. Yun's opinion. Dr. Rastogi provided a 2013 office visit note and stated: "Please see attached medical records. Unable to give medical opinion since haven't seen since 2013." (*Id.* MET/DALY/AR-710-17)

Dr. Singson did not provide any written opinion, but instead provided additional medical records. (*See id.* MET/DALY/AR-719-39) This included a June 2016 office visit note that stated in relevant part:

> Mr. Daly presents with a complaint of back problems. The patient reports associated symptoms of aching. His symptoms have not changed. The patient indicates that his severity is mild to moderate. His medication was effective. Had epidural steroid injection at Maryland Pain Clinic last 5/29/2013 which was not helpful. Hi sleft [sic] knee also hurts.

(*Id.* MET/DALY/AR-727) The office visit note also described Plaintiff's "functional status conditions," stating:

> The patient indicates the following functional status conditions: He is able to bath[e] himself. Patient is able to shower himself. The patient is able to cook food. The patient performs all activities of daily living without assistance. He is permanently unable to perform work activities due to his medical condition.

(*Id.*)

In the Employability Assessment and Labor Market Analysis, MetLife's Vocational Rehabilitation Consultant noted that "[b]ased on his education, training and experience and when considering his capabilities, restrictions and limitations . . . the following occupations [Telephone

Solicitor, Customer Service Representative, Information Clerk] were identified for which he is qualified and can be performed within his current restrictions and limitations." (*Id.* MET/DALY/AR-634)

Considering the medical records, the Medical Director Dr. Yun's opinion, and the vocational analysis in light of the Plan's definition of Total Disability, MetLife's termination letter concluded that while Plaintiff had some "permanent limitations," which precluded him from performing his own job, he was able to perform other jobs, stating in relevant part:

> We do not dispute that you have permanent limitations and based upon the totality of the clinical evidence that you do have permanent limitations. Although we determined the restrictions and limitations would prevent you from performing your own job, ***the restrictions and limitations would not prevent you from performing any other job for which you are fit by education, training or experience***. Although you reported your condition has not changed your file was reviewed by a Medical Director, a physician, who took into consideration all the information on file. In addition, at the time of the reinstatement of your claim in 2013 you were undergoing active treatment and there were recent diagnostic findings submitted.
>
> . . .
>
> In conclusion, upon completion of a thorough review of all the information contained in your claim file, taking into consideration the IPC and AVRC findings, it was determined that the medical evidence supported functional limitations that would prevent you from performing your own job, however, restrictions and limitations would not prevent you from performing any other job for which you are a fit by education, training or experience as of May 3, 2016 and beyond. Therefore, the decision to terminate your claim was accurate and your claim remains denied.

(*Id.* MET/DALY/AR-771-72) (emphasis added)

After exhausting MetLife's administrative process, Plaintiff initiated this lawsuit. (D.I. 1)

## II. LEGAL STANDARDS

### A. Summary Judgment

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).  An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A) & (B).  If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted).  The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory

allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

**B.      ERISA**

Pursuant to ERISA, a plan participant or beneficiary is permitted to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1332(a)(1)(B). "[A] denial of benefits challenged under § 1332(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where such discretionary authority is provided, the court reviews a benefits determination under an arbitrary and capricious standard.

*See Doroshow v. Hartford Life & Accident Ins. Co.*, 574 F.3d 230, 233 (3d Cir. 2009); *Post v. Hartford Ins. Co.*, 501 F.3d 154, 160-62 (3d Cir. 2007).  In such circumstance, the court asks whether there exists "sufficient evidence for a reasonable person to agree with the decision," *Courson v. Bert Bell NFL Player Ret. Plan*, 214 F.3d 136, 142 (3d Cir. 2000), seeking to determine if the plan administrator abused its discretion in reaching its conclusion, *see Fisher v. Aetna Life Ins. Co.*, 890 F. Supp. 2d 473, 480-81 (D. Del. 2012); *Malin v. Metropolitan Life Ins. Co.*, 845 F. Supp 2d 606, 611-12 (D. Del. 2012).  Under this deferential standard of review, the court may overturn the administrator's decision only if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law."  *Abnathya v. Hoffinan-LaRoche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993) (internal citations omitted).

When the plan administrator is burdened by a conflict of interest, the court will include that conflict as one of the many considerations informing its review.  *See Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 116-17 (2008).  The Supreme Court has made clear that such a conflict exists where "the entity that administers the plan, such as an employer or an insurance company, both determines whether an employee is eligible for benefits and pays benefits out of its own pocket."  *Id.* at 108.  "[A] conflict is merely one factor to be considered in evaluating whether [the] decision actually constituted an abuse of discretion."  *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 793 (3d Cir. 2010).

## III.  DISCUSSION

### A.    The Arbitrary and Capricious Standard of Review Applies

At the outset, the parties disagree on the applicable standard of review.  Plaintiff argues that the de novo standard of review applies because the Plan uses **"*satisfactory to us*"** language

12

and fails to convey that MetLife "had the power to determine compliance and interpret, implement or change the rules." (D.I. 20 at 9) (internal quotation marks omitted; emphasis added by Plaintiff) Defendant argues that the arbitrary and capricious standard of review applies because the Plan contains explicit language granting discretionary authority to MetLife. (*See* D.I. 16 at 10) The Court agrees with Defendant.

The Plan expressly grants MetLife discretionary authority to interpret the terms of the Plan and determine eligibility:

> Discretionary Authority of Plan Administrator
> and Other Plan Fiduciaries
>
> In carrying out their respective responsibilities under the Plan, ***the Plan Administrator and Other Plan Fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility and entitlement to Plan benefits in accordance with the terms of the Plan.*** Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown the interpretation or determination was arbitrary and capricious.

(D.I. 12 MET/DALY/AR-693) (emphasis added) Because the Plan confers discretionary authority upon MetLife, the Court must review MetLife's benefits determinations under the arbitrary and capricious standard of review. *See Doroshow*, 574 F.3d at 233; *Post*, 501 F.3d at 160-62.

Plaintiff counters that the language granting discretionary authority to MetLife is not part of the "Plan Documents," a category which is limited to the certificate of insurance. (D.I. 23 at 3) The Court disagrees. The "Discretionary Authority" provision quoted above is located, as Plaintiff correctly points out, in the "ERISA Information" section, which immediately follows a page containing this statement: "This is the end of the certificate. The following is ***additional***

information." (D.I. 12 MET/DALY/AR-688-89) (emphasis added)  In the Court's view, the Plan includes the certificate of insurance as well as the "additional" ERISA Information section (which includes information that the law requires the employee to be given).

No Third Circuit opinion directly addresses what documents can be considered as part of a plan for the purpose of determining whether the plan gives the administrator discretionary authority.  The Court believes all relevant documents must be considered.  *See Pettaway v. Teachers Ins. & Annuity Ass'n of Am.*, 644 F.3d 427, 434 (D.C. Cir. 2011) ("Far from suggesting that one plan document must contain all the legally relevant terms and language, the statutory text clearly contemplates multiple relevant documents."); *see also, e.g.*, *Killebrew v. Prudential Ins. Co. of Am.*, 2017 WL 1519500, at *3 (M.D. Pa. Apr. 27, 2017), *aff'd in part, vacated in part, remanded on other grounds*, 723 F. App'x 133 (3d Cir. 2018) (considering multiple documents as part of plan to assess discretionary review); *Strott v. Dimensional Inv., LLC Health & Welfare Plan*, 2015 WL 1299773, at *9 (W.D. Pa. Mar. 23, 2015) (same); *but see White v. Prudential Ins. Co. of Am.*, 908 F. Supp. 2d 618, 626-27 (E.D. Pa. 2012) (concluding that "ERISA Statement" was not part of Plan and cannot be source of discretionary review); *Orantes v. CNH Grp. Ins. Plan*, 2011 WL 1376069, *3 (E.D. Pa. Apr. 12, 2011) (same).  Here, the ERISA Information section describes basic details about the Plan, such as the name, type, and number of the Plan and the procedures for presenting claims and appealing any denials, and provides a "Statement of ERISA Rights," required by law.  (D.I. 12 MET/DALY/AR-689-94)  Hence, in the Court's view, this section constitutes part of the Plan.

Therefore, the Court will review MetLife's decision denying Plaintiff's claim under the

arbitrary and capricious standard.[4]

### B. MetLife's Decision was Based on Substantial Evidence

Plaintiff contends that even under the arbitrary and capricious standard, Plaintiff should prevail, as MetLife's final determination to terminate benefits was arbitrary and capricious and unsupported by substantial evidence. (D.I. 20 at 13) Defendant counters that it was not arbitrary and capricious to conclude that Plaintiff "maintained the functional ability to perform part-time work" and was not, therefore, totally disabled under the Plan. (D.I. 16 at 15)

MetLife's determination that Plaintiff was not totally disabled, as defined by the Plan, because he was able to perform part-time work was not arbitrary and capricious. Instead, it was supported by substantial evidence in the administrative record. MetLife was permitted to rely on the opinions of its medical consultants. None of them ignored Plaintiff's symptoms and impairments as reflected in the medical records. Rather they considered those records, especially the recent office visit notes from Dr. Singson, Plaintiff's primary care physician, and provided an opinion, recognizing that while Plaintiff had impairments that precluded him from performing his own occupation, the evidence did not support a finding that he was unable to perform other occupations in a part-time capacity. MetLife's decision to deny Plaintiff's claim was based on those opinions.

Reviewing the records from Dr. Singson, MetLife's Nurse Consultant noted that "[t]he majority of the records . . . are basically repetitive each visit with minimal findings." (D.I. 12

---

[4]"In applying the arbitrary and capricious standard in ERISA actions," the Court is generally "limited to reviewing the evidence contained within the administrative record." *Hansen v. Int'l Painters & Allied Trades Indus. Pension Plan*, 2018 WL 3642297, at *4 (E.D. Pa. Aug. 1, 2018). The Court will not consider evidence that was not part of the administrative record. (*See* D.I. 22 at 7, 8) (Defendant arguing Plaintiff seeks improperly to expand record in this litigation)

MET/DALY/AR-11)  The Consultant further noted that Dr. Singson's opinion was inconsistent with his office visit notes.  (*See id.*) (noting that while Dr. Singson states "Plaintiff is not capable of any sit, stand, walk [sic] and then records states he is capable of all ADLs [activities of daily living] without assistance which is ***contradictory***") (emphasis added)

MetLife's Medical Director, Dr. Yun, also reviewed the records from Plaintiff's primary care physician, Dr. Singson, and Plaintiff's neurosurgeon, Dr. Rastogi.  (*See id.* MET/DALY/AR-418-19)  In Dr. Yun's opinion, "the medical information provided support for continuous physical impairment, with restrictions and limitations," and Plaintiff was able to "function in a part time capacity."  (*Id.* MET/DALY/AR-419) (identifying specific restrictions and limitations, e.g., cannot twist, bend, or stoop, but continuous sitting possible)  Dr. Yun concluded that "[w]hile the claimant's symptoms are noted and appreciated, in my opinion, the recent medical information provided does not demonstrate findings to preclude function in a part time capacity with the above noted restrictions and limitations."  (*Id.*)

Relying on Dr. Yun's opinion, MetLife's Vocational Rehabilitation Consultant identified several occupations – Telephone Solicitor, Customer Service Representative, Information Clerk – that Plaintiff could perform in a part-time capacity, "[b]ased on his education, training and experience and when considering his capabilities, restrictions and limitations."  (*Id.* MET/DALY/AR-634)

Plaintiff's recent medical records further provided substantial evidence of Plaintiff's ability to perform part-time work.  In a June 2016 office visit note describing Plaintiff's "functional status conditions," Dr. Singson noted that Plaintiff "performs all activities of daily living without assistance."  (*Id.* MET/DALY/AR-727)

16

Plaintiff asserts that there were "multiple procedural irregularities" with MetLife's decision.[5]  Plaintiff argues that MetLife "unreasonably and selectively" considered Plaintiff's available medical evidence.  (D.I. 20 at 13)  In Plaintiff's view, "[i]t is simply unreasonable for Defendant to wantonly disregard Dr. Singson's contemporaneous assessment that Mr. Daly's symptoms have not and will not improve . . . and instead rely on the cold paper review of individuals hired by Defendant."  (*Id.* at 14)  However, there is nothing improper about making eligibility determinations based on the opinions of medical consultants hired by MetLife, who happened to form opinions different from those of Plaintiff's physicians.  *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003) (holding that "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation").  Moreover, MetLife did not "arbitrarily refuse to credit [Plaintiff's] reliable evidence, including the opinions of a treating physician."  *Id.*  Instead, MetLife properly relied on the opinions of its medical consultants, who reviewed the entire record, including the medical records from Dr. Singson and Dr. Rastogi.

Plaintiff argues that MetLife "unreasonably based its decision on a medical peer review

---

[5]Plaintiff acknowledges that two types of conflicts of interest may exist in a situation like this – structural and procedural – but Plaintiff has not asserted any structural conflict in MetLife's decision.  (*See* D.I. 20 at 12-13)  MetLife argues that it "administers all claims consistently, regardless of whether the plan is funded by an employer or by MetLife."  (D.I. 16 at 11)  MetLife has provided some evidence that it took steps to reduce potential conflicts, for example, by keeping its finances separate from its claims.  (*See* D.I. 15 Ex. A)  No record evidence supports MetLife having a structural conflict, so the Court need not consider how a structural conflict would affect the analysis.

report that [Plaintiff] can return to 'part-time' work." (D.I. 20 at 15) Plaintiff refers to the opinion of MetLife's Medical Director, Dr. Yun, and the vocational analysis that was based on Dr. Yun's report. (*Id.* at 16) According to Plaintiff, neither Dr. Yun's report nor the vocational analysis by MetLife's Vocational Rehabilitation Consultant explains what constitutes part-time work. (*Id.* at 16) Nor, in Plaintiff's view, were the job positions recommended by the vocational consultant positions for which Plaintiff was "***fit***" given the Plan's definition of totally disabled. (*Id.* at 17) (emphasis added by Plaintiff)

The Court concludes that MetLife's decision based on Dr. Yun's report and the vocational analysis was not unreasonable. Dr. Yun adequately explained how Plaintiff was capable of part-time work, so long as his job did not entail certain physical tasks and he was permitted to take occasional breaks. (*See* D.I. 12 MET/DALY/AR-419) (noting that "[i]n her opinion, physical function in a part time capacity may be reasonable and likely permanent" and identifying specific restrictions and limitations, such as Plaintiff "should not climb, twist, bend or stoop" but "[c]ontinuous sitting should be possible . . . break every hour could be considered") That Dr. Yun's report did not define with precision the meaning of part-time work does not render MetLife's decision – that Plaintiff was not "Totally Disabled" within the meaning of the Plan – arbitrary and capricious.

The vocational consultant properly relied on Dr. Yun's report and concluded that Plaintiff is capable of working part-time. (*See id.* MET/DALY/AR-634) She reached this conclusion after recognizing Plaintiff's "prior jobs in software sales since 1998" and finding that "[h]is work history is best summarized" by the occupation of a "Sales Representative, Computer and EDP Systems." (*Id.*) Undertaking a "transferrable skills analysis," she identified three specific

18

occupations – Telephone Solicitor, Customer Service Representative, or Information Clerk – which, in her view, Plaintiff was "qualified and can be performed within his current restrictions and limitations" based on his "education, training and experience." (*Id.*) She further noted that these "occupations would allow for standing/walking up to 45 minutes continuously with regularly scheduled breaks and the ability to shift positions from sitting/standing as needed for comfort," and these "occupations should not be considered an all-inclusive list of potential occupations [Plaintiff] can perform." (*Id.*)

On this record, there is substantial evidence to support MetLife's conclusion that Plaintiff was no longer unable to perform "any job" according to the Plan's definition of totally disabled. The record reflects that Plaintiff was trained and experienced in software sales for several years, which equipped Plaintiff with certain transferrable skills that could be adapted to a sedentary worker's needs. The mere fact that the vocational consultant could have identified other occupations for which Plaintiff was a better "fit" under the Plan does not make MetLife's decision unreasonable. MetLife was charged with the responsibility of resolving disputes concerning Plaintiff's eligibility, and MetLife's determination in this regard is supported by substantial evidence.

Plaintiff further argues that MetLife "unreasonably failed to consider [Plaintiff's] fully favorable Social Security decision." (D.I. 20 at 17) However, the award of Social Security benefits did not occur until after MetLife rendered its final claim determination, so MetLife could not have considered it.[6] Moreover, the Court's review is limited to the administrative record,

---

[6]To the extent Plaintiff is arguing that MetLife was obligated to delay its decision until after the Social Security Administration made its decision, that position is unavailing. MetLife had a statutory obligation to make a timely decision and is not required (or in some circumstances not

which does not include the subsequent Social Security award.  (*See* D.I. 22 at 13)  It is also true

that MetLife is not bound by the Social Security Administration's decision.  *See Brandeburg v.*

*Corning Inc. Pension Plan for Hourly Employees*, 243 F. App'x 671, 674 n.3 (3d Cir. 2007)

("While an SSA award may be considered as a factor in determining whether an ERISA

administrator's decision to deny benefits was arbitrary and capricious, it does not in itself

indicate that an administrator's decision was arbitrary and capricious, and a plan administrator is

not bound by the SSA decision.") (internal brackets and quotation marks omitted).

In sum, the administrative record was adequate to support MetLife's denial of Plaintiff's

claim.  MetLife's decision was not "without reason, unsupported by substantial evidence or

erroneous as a matter of law."  *Abnathya*, 2 F.3d 40, 45.  Accordingly, MetLife is entitled to

summary judgment, and Plaintiff is not.

## IV.    CONCLUSION

For the reasons stated above, the Court will grant Defendant's motion for summary

judgment (D.I. 15) and deny Plaintiff's motion for summary judgment (D.I. 21).[7]  An appropriate

Order follows.

---

even permitted) to delay making a decision until receiving arguably relevant but plainly non-dispositive information from other decisionmakers.

[7]Plaintiff also requests an award of attorneys' fees.  (D.I. 20 at 19)  As the Court is entering summary judgment for Defendant, however, there is no basis to award Plaintiff fees.